No. 98-377

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 14

298 Mont. 87

993 P. 2d 699

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RODNEY J. MOGEN,

Defendant and Appellant .

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Rosebud,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Terry J. Hanson, Miles City, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, C. Mark Fowler, Assistant Montana Attorney General,

Helena, Montana; Lee R. Kerr, Rosebud County Attorney, Forsyth, Montana

Submitted on Briefs: August 12, 1999

Decided: January 20, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1.Appellant Rodney J. Mogen (Mogen) appeals from the Order of the District Court of the Sixteenth Judicial District of the State of Montana, Rosebud County, denying his motion to suppress evidence and admitting evidence obtained during surveillance of his property. We affirm.

¶2.Did the District Court err in concluding that the officers were not infringing on Mogen's property while conducting surveillance operations?

FACTUAL BACKGROUND

¶3.On September 15, 1997, an anonymous caller informed the Rosebud County Sheriff's Office that Mogen was growing marijuana in the garden of his home in Rosebud, Montana. On September 26, 1997, Rosebud County Sheriff Officer Todd Martens, (Officer Martens) of the Eastern Montana Drug Task Force, and Kris Anderson, (Warden Anderson) a Montana Game Warden, traveled by boat down the Yellowstone River. They landed at a point on the east bank just up river from the Mogen residence and walked down the river bank to the Mogen property to begin their surveillance operation. The northern boundary of the Mogen property is the low water mark of the Yellowstone River. Officer Martens did not have a search warrant or permission to be on the Mogen property and testified that he brought Warden Anderson along to prevent them from trespassing on the Mogen property because he was under the belief that public access is allowed below the ordinary high water mark. The officers used binoculars to view the suspected

marijuana plant and took photographs of the plant from a point which they testified was north of the edge of the high water mark. The Mogen's have intentionally refrained from posting "no trespassing" signs or fencing the northern border of their property which parallels the river so as not to impair the aesthetic value of the property from the river.

¶4.Mogen filed a Motion to Suppress Evidence and Controvert Search Warrant on November 28, 1997. At his suppression hearing, Mogen introduced the testimony of an investigator and a licensed surveyor in an attempt to show that the officers could not have taken the photographs from below the ordinary high water mark. The District Court denied the motion by a memorandum and order dated March 16, 1998. On April 13, 1998, Mogen pled guilty to all counts and reserved the right to appeal the suppression issue. The District Court sentenced Mogen to terms of two years and six months concurrently, deferring the execution of both sentences. Mogen appeals his conviction based on the District Court's denial of his motions.

¶5.Mogen maintains that the evidence clearly demonstrates that the officers crossed above the ordinary high water mark in order to observe and take photographs of the marijuana plant in his garden area. He asserts that he had an expectation of privacy in that portion of his property, and that the officers entered his property without an invitation or a warrant and illegally seized evidence. Accordingly, he believes it was error for the District Court to conclude that the officers did not infringe on Mogen's property.

¶6.The standard of review of a district court's denial of a motion to suppress is whether the court's interpretation and application of the law is correct. *State v. Siegal* (1997), 281 Mont. 250, 257, 934 P.2d 176, 180 *(overruled in part by State v. Kuneff*, 1998 MT 287, 291 Mont. 474, 970 P.2d 556). We review the court's findings of fact to determine whether they are clearly erroneous and whether those findings were correctly applied as a matter of law. *Siegal*, 281 Mont. at 257, 934 P.2d at 180.

¶7.The State argues that evidence introduced at the suppression hearing which shows that the officers did not travel above the ordinary high water mark is more than the "mere scintilla of evidence" necessary to find substantial evidence supporting the District Court's findings of fact. Warden Anderson testified that he was trained in distinguishing the "high water mark" from the "ordinary high water mark." He stated that he stood in "mud and dirt and not on any living grass" and described a clear significant line of vegetation which indicated the ordinary high water mark. Officer Martens and Warden Anderson both testified that they stayed below this point.

¶8.Mogen argues that the officers stood 23 feet beyond the ordinary high water mark while photographing the marijuana plant, thereby illegally entering his property, an area in which the Mogens had a legitimate expectation of privacy. Consequently, Mogen urges this Court to declare all seized evidence inadmissable under the right to privacy and search and seizure provisions of the Montana Constitution.

¶9.Finding the testimony of Mogen's witnesses unpersuasive, the District Court concluded that Mogen had not proved the officers went beyond the ordinary high water mark in order to obtain the photograph of the marijuana plant. "The credibility and weight of witnesses is not for this Court to determine. This is a primary function of a trial judge sitting without a jury; it is of special consequence where the evidence is conflicting." *Cameron v. Cameron* (1978), 179 Mont. 219, 227, 587 P.2d 939, 944. The District Court noted that both parties agreed that the State as well as any member of the public had a right to travel unimpeded along the banks of the Yellowstone River up to the ordinary high water mark. *See Montana Coalition for Stream Access, Inc. v. Curran* (1984), 210 Mont. 38, 55-57, 682 P.2d 163, 172. The court further concluded that if the officers did venture beyond the ordinary high water mark, they were privileged to do so because Mogen did not give notice to the public of the private nature of his property.

¶10.The District Court's finding that the officers did not go beyond the ordinary high water mark in order to photograph the marijuana plant is dispositive of this matter. If the officers did not cross the ordinary high water mark, then there was no trespass or illegal search of Mogen's property. The portion of the District Court's memorandum stating "even if the officers did go beyond the ordinary high water mark they were privileged to do so," is therefore dicta.

¶11.There is no evidence in the record which leads this Court to conclude that the District Court's finding of fact is clearly erroneous or incorrectly applied as a matter of law and we will not overturn that finding on appeal.

¶12.Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER